# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| FOLLETT HIGHER EDUCATION GROUP, INC., | ) ) ) | Appeal from the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division |
| Plaintiff-Appellant, | ) ) | Bankr. No. 06 B 10566 |
| v. | ) ) | Adversary No. 07-141 Hon. A. Benjamin Goldgar |
| JAY BERMAN, | ) ) | Dist. Ct. No. 09 C 3377 |
| Defendant-Appellee. | ) | Hon. Robert M. Dow, Jr. |

## MEMORANDUM OPINION AND ORDER ON APPEAL

Appellant Follett Higher Education Group, Inc. timely filed this appeal from a final order of the bankruptcy court dismissing Follett's adversary proceeding pursuant to Federal Rule of Civil Procedure 52(c). This Court has jurisdiction pursuant to 28 U.S.C. § 158(a). In considering a bankruptcy appeal, the Court reviews factual findings for clear error, while conclusions of law are reviewed *de novo*. See *In re Midway Airlines*, 383 F.3d 663, 668 (7th Cir. 2003); *In re Frain*, 230 F.3d 1014, 1017 (7th Cir. 2000). As explained below, finding no error of fact or law in the decision of the bankruptcy court, this Court affirms the bankruptcy court's judgment.

**I.     Background**

    **A.     Factual History**

Until ceasing operations in 2006, Berman and Associates, Inc. ("B & A") was an Illinois corporation in the business of providing media-buying services to various clients, including Follett Higher Education Group, Inc. ("Follett"). Follett is an Illinois corporation that manages more than 750 college bookstores nationwide. At all relevant times, Jay Berman was the

president and sole shareholder of B & A. Between 2004 and the spring of 2006, B & A and Follett entered into a series of contractual arrangements whereby B & A was to act as Follett's media buyer. Pursuant to the agreements, Follett was to pay B & A 110 percent of the cost of the advertising that B & A placed on Follett's behalf. In turn, B & A was to pay the media outlets (newspapers, radio stations, billboards, etc.) and then B & A would retain ten percent as its fee for the services provided.

B & A began to experience a financial downturn and struggled to remain operating. It failed on numerous occasions to pay media outlets for Follett's advertising placements. Jay Berman admitted that there were "hundreds of thousands of dollars' worth of bills" that Follett gave him the money to pay, but that remained unpaid. He also acknowledged that B & A "commingled" the money of all of its clients, as well as B & A's own money, in a single account. Ultimately B & A closed its doors in the summer of 2006 and dissolved as an Illinois corporation in December 2006. When B & A went out of business in June of 2006, Berman "got rid of all the computers," and he and his wife abandoned or threw away the remaining paper records.

B.  **Procedural History**

On August 9, 2006, Follett filed an action in the Chancery Division of the Circuit Court of Cook County against B & A and Jay Berman individually. On August 23, 2006, Jay Berman filed a Chapter 7 bankruptcy petition in the Northern District of Illinois. On February 28, 2007, Follett filed an adversary proceeding against Jay Berman, alleging that Jay Berman had breached his fiduciary duties to Follett (Count I) and that he should be denied discharge pursuant to 11 U.S.C. § 523(a)(4) due to fraud or defalcation while Berman was acting in a fiduciary capacity (Count III). Follett voluntarily dismissed the state court action on November 11, 2007.

Counts I and III were tried before the bankruptcy court on May 7, 2009. At the close of Follett's case, Berman's counsel made an oral motion under Rule 7052 of the Bankruptcy Rules for a judgment based on partial findings. Rule 7052 incorporates Federal Rule of Civil Procedure 52(c), which provides for judgment on partial findings.[1] After hearing oral argument, the bankruptcy court rejected the grounds on which Berman moved, but dismissed Follett's adversary proceeding on separate grounds. The bankruptcy court also issued a Bankruptcy Rule 9021 judgment on Counts I and III.

On May 18, 2009, Follett filed a timely notice of appeal, and on May 21, 2009, Follett filed an amended notice of appeal correcting errors contained in the original notice. This Court has jurisdiction to hear Follett's bankruptcy appeal pursuant to 28 U.S.C. § 158(a)(1).

**II.  Analysis**

    **A.  Summary of the Bankruptcy Court's Ruling**

In the ordinary course of bankruptcy, the debtor's assets are applied to the payment of his debts, and, even though the assets usually will be insufficient to pay those debts in full, a debtor will emerge from bankruptcy with the unpaid balance discharged. *McClellan v. Cantrell*, 217 F.3d 890, 892 (7th Cir. 2000). Section 523(a)(4) of the Bankruptcy Code excepts certain debts from the discharge granted to a debtor in section 727: "A discharge under section 727 * * * of this title does not discharge an individual debtor from any debt * * * for fraud or defalcation while acting in a fiduciary capacity * * *." 11 U.S.C. § 523(a)(4). Follett's claim against Berman was for defalcation while acting in a fiduciary capacity.

---

[1] Judgment is appropriate under Rule 52(c) where a plaintiff fails to make a *prima facie* case, or, even if a *prima facie* case has been made, the court determines that the preponderance of the evidence is against the plaintiff. See *In re Regency Holdings (Cayman)*, 216 B.R. 371, 374 (S.D.N.Y. 1988). A motion under Rule 52(c) is not the same as a motion for a directed verdict. The court neither draws special inferences in the nonmovant's favor, nor considers the evidence in the light most favorable to the nonmovant. Because the court is the finder of fact in a bench trial, as in the present case, the bankruptcy judge has discretion on a Rule 52(c) motion to weigh evidence and determine credibility.

Follett presents two issues on appeal: (1) whether the bankruptcy court erred in holding that Follett failed to make out a *prima facie* case that Berman or B & A owed fiduciary duties to Follett within the meaning of the Bankruptcy Code, and (2) whether the bankruptcy court erred in imposing on Follett the burden of "piercing the corporate veil," and, if so, whether the bankruptcy court erred in determining that Follett failed to pierce the corporate veil. In this appeal, the relevant facts are not disputed. The dispute concerns whether the bankruptcy judge correctly applied the law to the facts.

The bankruptcy court determined that Follett did not make out a *prima facie* case that Berman was a fiduciary. The bankruptcy judge began his analysis noting that B & A and Jay Berman were distinct entities. Follett's contractual relationship was with B & A, a corporation, and not with Berman, the president and shareholder of the defendant corporation. In Illinois, as elsewhere, corporate officers, directors, and shareholders generally are not liable for corporate debts. The bankruptcy court determined that for Follett to make out a *prima facie* case, it would have had to (i) demonstrate that B & A stood in a fiduciary capacity to Follett and then pierce the corporate veil and show that Berman was an alter ego of B & A, or (ii) show that at the time that the obligations were made to Follett, B & A was insolvent.[2] The bankruptcy court found that Follett failed to make out a *prima facie* on either of these avenues of relief.

Follett argues that the bankruptcy court misapplied the law of this circuit when it held as a matter of law that B & A and Berman did not owe fiduciary duties to Follett. Relying on the Seventh Circuit's decision in *In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994), Follett contends that the evidence demonstrated the existence of an express trust settled by Follett and held by Berman over a period of many years, and that the trust axiomatically created fiduciary

---

[2] Follett does not appeal the bankruptcy court's ruling on this second prong – that Follett failed to show that at the time of the obligations to Follett, B & A was insolvent. This Court limits its review of the bankruptcy judge's decision to the issues presented on appeal.

duties on the part of Berman. In rendering his oral judgment, the bankruptcy judge also considered *Marchiando*, but refused to read into its fiduciary-capacity parameters the relationship urged by Follett. The bankruptcy judge read Seventh Circuit precedent to hold that a fiduciary relationship is formed only when an express trust exists prior to the alleged wrong or when one party has superior knowledge or power over the other party, and concluded that the facts marshaled by the parties did not establish a fiduciary relationship under either of these theories.

B.     **Fiduciary Capacity under § 523(a)(4)**

In *In re Marchiando*, the Seventh Circuit instructed that there must be a "res" in existence before the designated fiduciary relationship arises. A mere promise to pay a debt when circumstances giving rise to the obligation to pay come into existence, made by an individual to another person or entity of equal or superior standing, is not within the ambit of 11 U.S.C. § 523(a)(4). *In re Woldman,* 92 F.3d 546 (7th Cir. 1996). However, a "fiduciary duty" under this test includes circumstances which, although not comprising a literal or "formal" trust, do "call for the imposition of the same high standard." See *Marchiando*, 13 F.3d at 1115. For example, lawyer-client, director-shareholder, or managing partner-limited partner relationships all call for the principal to "repose a special confidence in the fiduciary." See *Frain*, 230 F.3d at 1017. The distinction stressed in *Marchiando* and its progeny is "between a trust or other fiduciary relation that has an existence independent of the debtor's wrong and a trust or other fiduciary relation that has no existence before the wrong is committed." *Marchiando*, 13 F.3d at 1115. *Marchiando* recognized the existence of an intermediate case – a trust that has a purely nominal existence until the wrong is committed – and deemed that to be closer to the "constructive or resulting trust

5

pole." Id. at 1116. The court noted that a constructive trust will not qualify for purposes of § 523(a)(4), since the obligations do not exist until the wrong is committed.

*Marchiando* involved an individual debtor who was the owner of a convenience store where Illinois lottery tickets were sold. During a period when the business was struggling, the business used the proceeds from the sale of lottery tickets to keep itself afloat instead of paying the proceeds from the sale of lottery tickets to the State of Illinois Department of Lottery ("SIDL"), as it was contractually obligated to do. Ultimately, the business failed and Marchiando filed for bankruptcy, with outstanding ticket sales receipts due to the SIDL. The bankruptcy court, district court, and Seventh Circuit ruled that Marchiando was not a fiduciary of the State of Illinois, which sought to have the debt excepted from discharge under § 523(a)(4). The court of appeals held that there was no express trust in place between Marchiando and the SIDL prior to the wrong and that, up until the time of the wrong, Marchiando simply was a ticket agent who owed no duties of a fiduciary character to the SIDL.

The case of *In re Pawlinski*, cited in Follett's brief, explains the requirements of an express trust: "An express trust is created when a settler manifests an intent to create such a trust and identifies the subject matter of the trust, the nature of the beneficiaries' interests, and the manner in which the trust is to be performed." 170 B.R. 380, 389 (Bkrtcy. N.D. Ill. 1994). In *Pawlinski*, the court held that the existence of an express trust was evidenced by a written receipt stating "[r]eceived from Harry Green $53,000 (fifty three thousand dollars) for the purchase of two 1985 Cadillac limousines." *Id*. at 389. The receipt for the deposit of funds used to purchase the limousines identified the funds the creditor had placed with the debtor – the document identified the funds as the subject matter of the trust, the vehicles as the nature of the creditor's interests, and the purchase of the vehicles as the manner in which the trust was to be performed.

The court also noted that it was "a sad case about a trusting and vulnerable man conned by debtor-defendant and another sharpie" – a man who was physically handicapped, had only a ninth grade education, and valued friendship and companionship. *Id.* at 383. The court stated that the "combination of his desire for companionship and his lack of education made him an individual who was an easy subject to be deceived." *Id.*

In the present case, the evidence at trial included written contracts between the parties entered into between 2004 and 2006. The contracts all indicated that B & A would provide Follett with "bill paying" services. The contracts did not specifically identify monies tendered by Follett to B & A, nor did the contracts explicitly state that a trust was being created. The contracts did not mention how payments from Follett to B & A were to be made and did not identify specific funds that were to be held by B & A for the benefit of Follett. Nor did the contracts include requirements that the funds were to be segregated from other B & A funds.

Follett argues that B & A owed Follett "real duties." App. Br. at 12. As part of these duties, Follett contends that it paid B & A certain monies and that B & A "was supposed to pass it on to specific persons and in specific amounts." *Id.* Unfortunately for Follett, while it may have expected B & A to conduct its business in accord with the contracts or a prior course of dealing, an express trust was never created. B & A obviously failed in its obligations, but the Seventh Circuit has stressed that "only a subset of fiduciary obligations is encompassed by the word 'fiduciary' in section 523(a)(4)." *Matter of Woldman*, 92 F.3d 546, 547 (7th Cir. 1996) (citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934)). "Segregation of funds, management by financial intermediaries, and recognition that the entity in control of the assets has at most 'bare' legal title to them, are hallmarks of the trust." *Cf. In re McGee*, 353 F.3d 537 (finding that city ordinance requiring landlords to invest security deposits in segregated, interest-

bearing accounts created a "fiduciary" relation between debtor and tenants, such that debtor's improper withdrawal and use of the funds amounted to defalcation while acting in a fiduciary capacity, within the meaning of the discharge exception). In this case, the intent to create an express trust was not clearly manifested beyond what may be supposed, inferred, or implied from contractual terms between the parties; indeed, the parties did not agree to segregate the funds, enlist a financial intermediary, or opine on B & A's legal title to the assets in any of the written documents produced at trial.

The bankruptcy court also concluded that the relationship between Follett and B & A, while an agency relationship, was "nominal" in terms of any suggestion that it imposed a fiduciary duty under the law. Trans. 186:20-23. The court held that, under the circumstances of this case – since an express trust was not created prior to the wrong – something "more" was required under § 523(a)(4). Under Seventh Circuit precedent, that "something more" is a showing of difference in knowledge or power between the parties. See *Marchiando*, 13 F.3d at 1116 (defining a fiduciary relationship under § 523(a)(4) as "a difference in knowledge or power between fiduciary and principal which * * * gives the former a position of ascendancy over the latter"); see also *In re Frain*, 230 F.3d 1014, 1017 (7th Cir. 2000) (same). In *Woldman*, the Seventh Circuit clarified its holding in *Marchiando*, stating that § 523(a)(4) "reaches only those fiduciary obligations in which there is a substantial inequality in power or knowledge in favor of the debtor seeking the discharge and against the creditor resisting discharge, and does not reach 'a trust that has a purely nominal existence until the wrong is committed.'" 92 F.3d at 547 (citing *Marciando*, 13 F.3d at 1116).

Follett contends that *McGee* did away with that requirement and that the bankruptcy court erred in requiring Follett to show a difference in knowledge or power. While the existence

8

of disparate status or knowledge is not an indispensable requirement of a fiduciary relationship, see *McGee*, 353 F.3d at 541, the Seventh Circuit's instruction in *Marchiando* was not superseded by *McGee*. The *Marchiando* court viewed the inquiry into the difference in knowledge or power as a potential way to impose a fiduciary duty where justice required: "If we probe more deeply the distinction between the fiduciary relation that imposed real duties in advance of the breach and the fiduciary relation that does not we find that the first group of cases involve a difference in knowledge or power between fiduciary and principal." 13 F.3d at 1116. The *McGee* court found that because an express trust, created by the Chicago Municipal Code, existed prior to the wrong, a showing of difference in knowledge or power was not essential. 353 F.3d at 340-41 (finding that "formal separation and ownership rules" dictated by the ordinance were components of an economic relation amounting to a fiduciary relationship, regardless of the absence of disparity in knowledge or status between the landlord and tenant).

In the present case, both Follett and B & A are corporations. The evidence submitted at trial identified Follett as a sizable company that manages a large number (more than 750) of college bookstores across the country, while its agent, B & A, was a four-to-five person firm that dealt with some of the Follett customers. While B & A was dealing directly with the media outlets, that was the typical agency-relationship protocol. Follett did not demonstrate an inequality between the parties or a difference in power that gave B & A a position of ascendancy over Follett. *Cf. Pawlinski*, 170 B.R. at 383 (noting that this was "a sad case" about a trusting and vulnerable man, who was physically handicapped and had only a ninth grade education, conned by debtor-defendant and another "sharpie").

The bankruptcy court correctly interpreted this circuit's precedent in finding that a fiduciary relationship is formed only when an express trust exists prior to the alleged wrong or

when one party has superior knowledge or power over the other party. The bankruptcy court also correctly noted that while 523(a)(4) typically is limited to "what's called an express trust," the *Marchiando* court, and subsequent Seventh Circuit decisions, have extended the notion of fiduciary to trusts that preexist the wrong and trusts, such as resulting or constructive trust, that come about only because of the wrong. See Trans. 184:16-24. And because the bankruptcy court (i) considered the relevant law and interpreted it correctly, and (ii) appropriately determined that the facts marshaled by the parties did not establish a fiduciary relationship under any of the theories set forth above, this Court affirms the bankruptcy court's ruling that B & A did not owe a fiduciary duty to Follett as required by § 523(a)(4) to except from discharge the debt owed to Follett.[3]

---

[3] After interpreting the bankruptcy code and case law in this circuit, the bankruptcy court held that Berman and Associates was not a fiduciary of Follett. Having found that B & A was not a fiduciary under § 523(a)(4), Follett could not succeed in its effort to convince the court that, by extension, Jay Berman was a fiduciary (either under a piercing-the-corporate-veil theory or, as Follett argues on appeal, because Berman was personally liable for the tort of breach of fiduciary duty). Because the Court affirms the bankruptcy court's finding that B & A was not a fiduciary under § 523(a)(4), the Court need not address Follett's remaining arguments on appeal.

## III. Conclusion

For the foregoing reasons, the decision of the bankruptcy court is affirmed.

Dated: March 29, 2010

_____
Robert M. Dow, Jr.
United States District Judge